## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | 2:04-CV-1-DF |
| | § | |
| ECHOSTAR COMMUNICATIONS | § | |
| CORP., et al. | § | |
| | § | |
| **Defendants.** | § | |

## ORDER

Before the Court are five motions in limine filed by Plaintiff TiVo, Inc. ("Tivo"), each

opposed by the EchoStar Defendants[1] ("EchoStar"), and ten motions in limine filed by EchoStar,

each opposed by TiVo.  On September 22, 2005, the parties were heard on these motions.

Having considered each motion, response, and other related submissions, as well arguments of

counsel and the relevant law on each motion, the Court finds that the motions in limine should be

ruled on as set forth herein.

### A.  TiVo's Motions in Limine

### 1. TiVo's Motion in Limine #1

TiVo, in its first motion in limine, moves to preclude EchoStar from introducing into

evidence or making arguments regarding agreements wholly between non-parties.   Dkt. No. 222.

EchoStar filed a response, to which TiVo replied, and EchoStar then filed a sur-reply.  Dkt. Nos.

265, 305, and 326, respectively.

---

[1]The "EchoStar Defendants" refers to EchoStar Communications Corp., EchoStar DBS, EchoStar Technologies Corp., EchoStar LLC, and EchoStar Satellite LLC.

TiVo's motion targets three agreements: an agreement between ReplayTV, Inc. and General Instrument Corporation; an agreement between Metabyte Networks, Inc. and Scientific-Atlanta, Inc., and an agreement between Digital Networks North America, Inc. and Microsoft Corporation (the "non-party agreements").  Dkt. No. 222 at 1.  EchoStar plans to introduce these licenses as part of their damages case and argues that real-world license agreements between non-parties, such as these agreements, are routinely admitted into evidence where a reasonable royalty is sought.  Dkt. No. 265 at 7.

TiVo replies that the three agreements in question are not comparable and are highly confidential and not publicly accessible and therefore they are irrelevant to a hypothetical negotiation.  Dkt. No. 305 at 2.  To this, EchoStar responds that comparable licenses are among factors listed for consideration in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116.  Dkt. No. 326 at 2.  Further, EchoStar argues that "the reasonable royalty methodology permits consideration of facts that would not have been known so long as they are relevant to the critical time period of the negotiation…"  Dkt. No. 326 at 2, citations omitted.

Having considered the parties' positions and the applicable law, **TiVo's Motion in Limine No. 1 is hereby DENIED.**


**2. TiVo's Motion in Limine #2**

After TiVo's second motion in limine was fully briefed, Dkt. Nos. 218, 266, and 306, the parties reached a stipulation on the issue.  Dkt. No. 382.  Therefore, **TiVo's Motion in Limine No. 2 is hereby DENIED without prejudice**.

### 3. TiVo's Motion in Limine #3, A-C

TiVo's third motion in limine is directed at excluding the introduction of certain alleged prior art references: Motion 3-A addresses the EchoStar Screamin' Streamer and the BJS 180 systems; Motion 3-B addresses the MP100 system developed by Divicom, Inc.; and Motion 3-C addresses the MPEGscope system developed by Hewlett Packard Co.  Dkt. No. 219.  EchoStar filed a response, to which TiVo replied.  Dkt. Nos. 267 and 309, respectively.

TiVo argues that, regarding systems addressed by Motions 3-A and 3-B, EchoStar has failed to proffer clear and convincing evidence that any of these systems qualifies as prior art under either § 102 or § 103.  Dkt. No. 219 at 3-4.  EchoStar responds that, because TiVo did not file a summary judgment motion challenging that the disputed references were prior art, the question becomes one of fact for the jury.  Dkt. No. 267 at 1.  As a result, EchoStar argues, the issue is not amenable to resolution on a motion in limine.  Dkt. No. 267 at 2. Notably, TiVo does not take issue with this argument in its reply.

Regarding the system addressed by Motion 3-C, EchoStar has represented to TiVo and to the Court that it has withdrawn the MPEGscope from its list of prior art references, thereby mooting this portion of the motion. Dkt. No. 267 at 1 n.1.

Having considered the parties' positions and the applicable law, **TiVo's Motion in Limine No. 3 is hereby DENIED.**

### 4. TiVo's Motion in Limine #4

TiVo, in its fourth motion in limine, moves to preclude EchoStar from offering evidence or argument, or make other suggestions, inconsistent with the Court's claim construction rulings.

Dkt. No. 221.  EchoStar filed a response, to which TiVo replied.  Dkt. Nos. 262 and 310, respectively.

During the hearing on this motion, EchoStar's counsel opposed the motion as unnecessary and unworkable but represented that it has no intention of challenging or having its experts challenge the Court's claim construction.  9-22-05 Hr. Tr. at 19.  TiVo argued that the order is workable and that, if granted, should apply equally to both parties.  9-22-05 Hr. Tr. at 20.  Further, Tivo raised the concern that, unless an order on this issue is in place before trial, EchoStar may raise objections if TiVo were to use the Court's claim construction order to impeach a witness.  *Id.*

Given EchoStar's representations, though noting TiVo's concerns, the Court will not grant TiVo's fourth motion in limine.  If either party should determine it is appropriate, however, this issue may be raised for consideration by objection during the course of the trial.  Therefore, **TiVo's Motion in Limine No. 4 is hereby DENIED.**


**5. TiVo's Motion in Limine #5**

TiVo, in its fifth motion in limine, moves to preclude argument regarding the Reverse Doctrine of Equivalents.  Dkt. No. 220.  EchoStar filed a response, to which TiVo replied, and EchoStar then filed a surreply.  Dkt. Nos. 263, 311, and 327, respectively.

Tivo argues that, for two reasons, EchoStar should be precluded from presenting a Reverse Doctrine of Equivalents defense.  First, TiVo argues that EchoStar failed to mention this defense in response to TiVo's Interrogatory No. 11, which asked: "For all of your [EchoStar's] digital recorders, describe with specificity any EchoStar assertion that such digital video

-4-

recorders do not infringe any claim of the '389 patent…." Dkt. No. 331 at 2; 9/22/05 Hr. Tr. at 21.  Second, TiVo argues that EchoStar's infringement experts have separately failed to express any opinions or statements regarding the Reverse Doctrine of Equivalents.  9/22/06 Hr. Tr. at 21.

In response, EchoStar raises two issues.  9/22/06 Hr. Tr. at 22.  First, EchoStar argues that Interrogatory No. 11 requested only the facts upon which EchoStar claimed it did not infringe, and EchoStar's response set forth the relevant facts.  *Id.*  Second, EchoStar argues that its experts testified to the facts regarding why EchoStar does not infringe.  *Id.* at 23.  EchoStar represents that its experts will "testify to the substantial differences enumerated in their reports… EchoStar attorneys will then argue to the jury that these many substantial differences support a finding of noninfringement under the Reverse Doctrine of Equivalents." Dkt. No. 263 at 1-2. EchoStar also points out that it asserted a Reverse Doctrine of Equivalents defense in its original answer and in every subsequent answer, thereby putting TiVo on notice of its intentions.

Upon review, the Court finds that Interrogatory No. 11, in requesting a description of "any EchoStar assertion" of noninfringement, is broader than a request for only the facts underlying a noninfringement theory and instead includes any assertions regarding the Reverse Doctrine of Equivalents.

Having considered the parties' positions, the Court hereby **ORDERS** that EchoStar shall, within five (5) days of the entry of this Order, file a supplemental response to Interrogatory No. 11 providing a detailed answer regarding its Reverse Doctrine of Equivalents defense.  It is further **ORDERED** that, having failed to provide opinions with specific reference to the Reverse Doctrine of Equivalents, EchoStar's experts are hereby **PRECLUDED** from referring to the Reverse Doctrine of Equivalents during their testimony.  Therefore, **TiVo's Motion in Limine**

**No. 5 is DENIED** with the assumption that EchoStar's supplemental response to Interrogatory No. 11 will provide sufficient detail, but may be renewed in the event TiVo is of the opinion the supplemental interrogatory response is deficient.

## II. ECHOSTAR'S MOTIONS IN LIMINE

### 1. EchoStar's Motion in Limine #1

EchoStar, in its first motion in limine, moves to preclude reference to, use of and reliance upon the expert report and testimony of John R. Hauser. Dkt. No. 193. TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply. Dkt. Nos. 247, 278, and 320, respectively.

John R. Hauser, TiVo's expert, plans to testify regarding the "fair market value" of a digital video recorder as of April 2005 based upon a survey he conducted ("Hauser Survey"). EchoStar argues that the Hauser Survey should be excluded under Federal Rules of Evidence ("FRE") 402 and 702 because there is no fair market value measure of damages under patent law and because it is unrelated to a damages calculation under either a reasonable royalty or lost profits model. Dkt. No. 193 at 6-7.

EchoStar argues that, in this case, the hypothetical negotiation required to arrive at a reasonable royalty would have taken place in 2001, yet the Hauser Survey was not available until 2005. Dkt. No. 193 at 7. EchoStar acknowledges that TiVo's damages expert refers to the Hauser Survey in his reasonable royalty analysis, but argues the information is still irrelevant based upon the hypothetical negotiation date. EchoStar further argues that the Hauser Survey is irrelevant to a lost profits analysis because, as it amounts to a snapshot of demand in April 2005,

it has no relevance to the requirements to show demand over the entire accounting period.  *Id.* at 8-9.

Lastly, EchoStar argues that the information should be excluded under FRE 403 as the relevance of the information is substantially outweighed by the risk of unfair prejudice to EchoStar.  Dkt. No. 193 at 9.  EchoStar argues that, if the Hauser information is allowed in, there is a risk that the jury may simply compare the higher dollar figure from the survey to TiVo's seemingly more modest damages demands – amounting to a legally irrelevant, dollar-to-dollar comparison.  Dkt No. at 193 at 10.

TiVo responds that Hauser's information regarding the April 2005 survey is relevant to both reasonable royalty and a lost profits damages calculations.  Dkt. No. 247.  TiVo argues the information is relevant to several reasonable royalty factors set forth in *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970), specifically to factors 6, 8, 10, 11, 14, and 15. Dkt. No. 247 at 3-4.  TiVo argues that, although the Hauser Survey was not available until after the date of the hypothetical negotiation, post-hypothetical negotiation date evidence is included in and relevant to the reasonable royalty analysis and that courts "are allowed a fair amount of temporal leeway in their analysis of the hypothetical negotiation…" Dkt. No. 247 at 4-5. TiVo argues that the Hauser Survey is relevant to its lost profits damages calculation because, for such a calculation, "a patentee must demonstrate that there was a reasonable probability that, 'but for' the infringement, it would have made the additional sales." Dkt. No. 247 at 7, citations omitted. Lastly, TiVo argues that the Hauser Survey presents FRE 403 dangers.  Dkt. No. 247 at 7.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in**

-7-

**Limine No. 1 is hereby DENIED.**

**2. EchoStar's Motion in Limine #2**

EchoStar, in its second motion in limine, moves to exclude reference to or evidence regarding written opinion of counsel.  Dkt. No. 194.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 244, 279, and 323, respectively.

This Court has dealt at length with issues concerning the Merchant & Gould opinions and will not here recount its prior orders on the topic.  After this motion in limine was filed, the Court ordered EchoStar to produce the Merchant & Gould opinions, and EchoStar has since produced the opinions.

**EchoStar's Motion in Limine No. 2 is hereby DENIED.**

**3. EchoStar's Motion in Limine #3**

EchoStar, in its third motion in limine, moves to preclude any reference to, use of, or reliance upon the Patent and Trademark Office Museum display, or alternatively to allow discovery.  Dkt. No. 195.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 260, 298, and 344, respectively.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in Limine No. 3 is hereby GRANTED and TiVo is hereby PRECLUDED from referring to, using, or relying upon the display.**

**4. EchoStar's Motion in Limine #4**

EchoStar, in its fourth motion in limine, moves to preclude TiVo from denying the existence of non-infringing alternatives.  Dkt. No. 196.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 243, 280, and 325, respectively.

EchoStar argues that TiVo has failed, both in fact and expert discovery, to identify whether any specific competing product is infringing or non-infringing.  Dkt. No. 196 at 1.   As a result, EchoStar argues, TiVo should be precluded from denying that there are non-infringing alternatives.  *Id.*  TiVo responds that the existence or non-existence of non-infringing alternatives is irrelevant to the case and that, as an alternative to EchoStar's request, both parties should be precluded from presenting evidence or argument regarding the existence or non-existence of non-infringing alternatives.  Dkt. No. 243 at 3.   In any event, TiVo argues, it has already represented as follows, which should have resolved this dispute:  "TiVo is unaware of any non-infringing alternatives, but will make at trial no allegations of infringement against the specific products (except for EchoStar products) or any other third parties' products."  Dkt. No. 325 at 2 citing TiVo's Supplemental Responses to EchoStar's Interrogatories Nos. 1, 4, 12, 13, 21, 23, dated August 15, 2005.

During the hearing on this motion, EchoStar's counsel represented that "all we [EchoStar] intend to do at trial is to read their interrogatory answer, your honor, and have our expert talk about what the significance of that is."  9/22/05 Hr. Tr. at 85.

Despite TiVo's position, the issue of non-infringing alternatives has not exited this case. Of course, if and when this issue arises at trial, TiVo is limited by its discovery disclosures and representations on this issue.  The order EchoStar seeks in its motion in limine therefore appears unnecessary.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in Limine No. 4 is hereby DENIED.**


**5. EchoStar's Motion in Limine #5**

EchoStar, in its fifth motion in limine, moves to preclude reference to, use of and reliance on the expert testimony and opinion of Alan Gordon on willfulness.  Dkt. No. 197.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 239, 281, and 322, respectively.

Alan Gordon, TiVo's expert, plans to testify regarding willful infringement. EchoStar seeks to exclude Gordon's testimony under FRE 702 on the basis that it will not assist the trier of fact.  EchoStar argues that, because it is the jury's role to make factual findings regarding willfulness and the Court's role to instruct the jury on the law, Gordon's testimony is improper as he attempts to perform both roles.  EchoStar cites cases where expert testimony regarding willfulness was excluded in its entirety as unhelpful and inadmissible.

TiVo responds that it plans to offer Gordon's testimony to impeach the testimony expected from EchoStar's willfulness witnesses.  TiVo also argues that allowing Gordon's testimony neither usurps the role of the jury or of the Court. Instead, TiVo defends the testimony as helpful to the jury in making a determination on the totality of the circumstances, as willfulness requires. TiVo also cites cases that allow similar testimony.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in Limine No. 5 is hereby DENIED.**

**6. EchoStar's Motion in Limine #6**

EchoStar, in its sixth motion in limine, moves to preclude reference to, use of, or reliance upon the preamble of any asserted claim as a limitation.  Dkt. No. 198.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 242, 284, and 318, respectively.

At issue in this motion is whether TiVo can present evidence or argument that the preambles of the asserted claims are limiting and thus can be considered to distinguish those claims from prior art.  Whether or not the preamble acts as a limitation is properly an issue of claim construction, and therefore within the province of the Court.  *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 979 (Fed. Cir. 1995). Here, although TiVo seeks to rely on preamble limitations in the context of validity and not in the context of infringement, TiVo also acknowledges that claims are construed the same way for infringement and for validity.  Dkt. No. 242 at 1 citing *W.L. Gore & Assocs., Inc. v. Garlock, Inc.,* 842 F.2d 1275, 1279 (Fed. Cir. 1988).  Neither TiVo nor EchoStar has previously argued to the Court that the preambles in the '389 patent are either limiting or non-limiting; this issue was not addressed in either party's claim construction briefing.  In August 2005, the Court has issued a claim construction ruling wherein the preambles were not construed as limitations.

Now, it appears that TiVo plans to present testimony and argument that the preambles do limit the claims, essentially offering claim constructions different than the Court's Claim Construction Order.  The introduction of constructions inconsistent with the Court's claim construction is a practice that TiVo itself has identified as improper.  *See* TiVo's Motion in Limine No. 4, Dkt. No. 221.  If either party determined that the preambles if the asserted claims

limited those claims, they should have raised this issue with the Court as a matter of claim construction. Although the briefing regarding the present motion in limine addresses several claim construction principles, the parties have not asked the Court to reconsider its claim construction order. And, in considering the patent at issue and the briefing on the current motion in limine, the Court does not see a reason to revisit its order.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in Limine No. 6 is hereby GRANTED and applies to both parties.**


**7. EchoStar's Motion in Limine #7**

EchoStar, in its seventh motion in limine, moves to preclude reference to, use of, and reliance on alleged convoyed sales of TiVo's subscription service. Dkt. No. 199. TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply. Dkt. Nos. 248, 286, and 317, respectively.

EchoStar argues that, because TiVo's subscription services are neither central to nor needed to practice the '389 patent, TiVo's unpatented services lack the necessary "functional relationship" to TiVo's digital video recorder unit to be recoverable as lost profits under the entire market value rule. And that accordingly, TiVo should be precluded from introducing any evidence of lost profits on convoyed sales of TiVo's subscription services. Dkt. No. 199 at 1. TiVo responds that whether or not there is a "functional relationship" between products is a question of fact for a jury to decide. Dkt. No. 248 at 3, citing *State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* 346 F.3d 1057, 1074 (Fed. Cir. 2003); *TecAir, Inc., v. Denso Mfg. Michigan, Inc.,* 192 F.3d 1353, 1362 (Fed. Cir. 1999). TiVo then argues in detail the evidence upon which

-12-

a jury could find that the TiVo's digital video recorders and its subscription service constitute a functional unit.  Though EchoStar filed a reply, it did not contest that matter of what constitutes a functional unit is a question for the jury.  Dkt. No. 286.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in Limine No. 7 is hereby DENIED.**


**8. EchoStar's Motion in Limine #8**

EchoStar, in its eighth motion in limine, moves to preclude reference to, use of and reliance on the expert testimony and opinion of Keith R. Ugone on damages.  Dkt. No. 200. TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 249, 285, and 321, respectively.

Keith Ugone, TiVo's damages expert, plans to testify regarding a damages calculation under both a lost profits and a reasonable royalty model.  EchoStar argues the methodology underlying the Ugone damages calculations is unsound.  Regarding Ugone's lost profits opinion, EchoStar argues that a "but for" analysis is required and that Ugone's "market share allocation" approach applying "penetration rate" analysis results in a faulty lost profits calculation.  EchoStar argues that Ugone's lost profits calculation is not based on any approved methodology, does not apply the required "but for" inquiry; and is not based on sufficient facts and evidence. For these reasons, EchoStar argues that Ugone's lost profits opinions should be excluded under FRE 702. EchoStar also argues that certain data relied on by Ugone for his lost profits analysis, data provided by the Carmel Group, is hearsay under FRE 801 and does not satisfy the requirement of FRE 703.  Lastly, EchoStar also argues that Ugone's reasonable royalty calculation should be

excluded under FRE 702 because it takes into account events that occurred after the date of the hypothetical negotiation.

In response to EchoStar's lost profits arguments, TiVo argues that there is no law prohibiting Ugone from calculating lost profits based on a penetration rate analysis and no law requiring the lost profits calculation to be based upon a market share analysis. Instead, TiVo argues, penetration rate is simply a different way to calculate "but for" damages and therefore a valid methodology for a lost profits calculation. TiVo also argues that EchoStar's challenges to the underlying information from the Carmel Group should fail in light of FRE 703, which authorizes experts to rely on industry information, including hearsay.

Regarding Ugone's a reasonable royalty calculation, TiVo argues that, although the reasonable royalty is supposed to be calculated as of the time of the hypothetical negotiation, in May 2001 here, Ugone's consideration of post-negotiation date events is nonetheless proper. TiVo argues that the seminal factors set forth in the *Georgia-Pacific Corp. v. United States Plywood Corp.,* 318 F. Supp. 1116 (S.D.N.Y. 1970), case expressly contemplate the consideration of post-hypothetical negotiation date information. Here, Ugone relied on post-May 2001 information such as the license rate taken by EchoStar's main competitor in 2002. TiVo then argues that EchoStar's own damages expert also considered post-2001 events in calculating damages.

Having considered the parties' positions and the applicable law, **EchoStar's Motion in Limine No. 8 is hereby DENIED.**


**9. EchoStar's Motion in Limine #9**

EchoStar, in its ninth motion in limine, moves to preclude evidence on the doctrine of equivalents.  Dkt. No. 201.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 240, 282, and 319, respectively.

EchoStar argues that TiVo has violated its obligations under Fed. R. Civ. P. 26 and has failed "to disclose the type of particularized evidence required to support an assertion of infringement by equivalents." Dkt. No. 201 at 1.  In addition, EchoStar argues that TiVo should be precluded from presenting any expert testimony regarding whether EchoStar's 7100 and 7200 digital video recorder products infringe the '389 patent as TiVo failed to present any expert testimony on this point. *Id.*

Without conceding any failings in its disclosures regarding its allegations of infringement under the doctrine of equivalents, TiVo, in its surreply, argues that it provided detailed allegations on this topic in Dr. Gibson's Supplemental Expert Report dated September 13, 2005 and that EchoStar had an opportunity to explore Dr. Gibson's opinions relating to infringement under the doctrine of equivalents during three days of deposition which included September 15, 2005.  Dkt. No. 319 at 1.  Further, TiVo represents that it "will not pursue any claims of infringement against" EchoStar's 7100/7200 receivers.[2] *Id.* at 2.

The Court hereby **ORDERS** TiVo to submit to the Court, within two (2) days of the entry of this order, a copy of Dr. Gibson's Supplemental Expert Report and excerpts of Dr. Gibson's deposition addressing infringement under the doctrine of equivalents.  The Court will rule on EchoStar's ninth motion in limine after review of these documents.

---

[2]Although TiVo no longer asserts that these EchoStar devices infringe its patent, in an outstanding summary judgment motion, EchoStar seeks declaratory judgment of no infringement by these devices.  *See* Dkt. No. 136 and 9/22/05 Hr. Tr. at 115.

**10. EchoStar's Motion in Limine #10**

EchoStar, in its tenth motion in limine, moves to preclude reference to, use of and reliance upon other EchoStar litigation.  Dkt. No. 202.  TiVo filed a response, to which EchoStar replied, and TiVo then filed a surreply.  Dkt. Nos. 250, 283, and 324, respectively.  Then, on January 23, 2006, TiVo filed a Notice of Partial Non-Opposition to EchoStar's Motion in Limine No. 10 Re: Reference to, Use of, and Reliance on EchoStar's Other Litigation wherein TiVo represented it would "agree that neither side shall introduce any evidence or argument relating to EchoStar's pending lawsuit against TiVo."  Dkt. No. 419.

Having considered the parties' positions, the Court hereby **ORDERS** that TiVo is hereby **PRECLUDED** from reference to, use of and reliance upon other EchoStar litigation except for impeachment purposes.  Therefore, **EchoStar's Motion in Limine No. 10 is hereby GRANTED AS MODIFIED.**

## V. Conclusion

Accordingly, the Court hereby ORDERS that the parties' motions in limine are granted, denied, or modified as set forth herein.

**SIGNED this 26th day of January, 2006.**

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE