IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:04-CV-01 (DF) |
| | § | |
| DISH NETWORK CORPORATION, et al., | § | |
| | § | |
| Defendants. | § | |

**O R D E R**

Before the Court is TiVo's Revised Motion on Remand for Damages During the Stay of the Permanent Injunction. Dkt. No. 852. Also before the Court are EchoStar's response and TiVo's reply. Dkt. Nos. 854 & 857. The Court held a hearing on this and other matters on September 4, 2008. Dkt. No. 860 (transcript). Having considered the parties' arguments in light of this Court's holdings and relevant case law, the Court hereby establishes a royalty rate of $1.25 per DVR subscriber per month during the stay period.

**I. BACKGROUND**

In this patent infringement action, Plaintiff TiVo, Inc. ("TiVo") alleged that Defendants EchoStar Communications Corporation,[1] EchoStar DBS Corporation, EchoStar Technologies Corporation, EchoStar Satellite LLC, and EchoSphere LLC's (collectively "EchoStar") digital video recorders ("DVRs") infringe several claims in TiVo's U.S. Patent No. 6,233,389 ("the '389 Patent"). Dkt. No. 3 (Amended Complaint). In March 2006, the case was tried to a jury. The jury found that

---

[1] DISH Network Corporation has been substituted for EchoStar Communications Corporation and EchoStar Corporation has been joined as a defendant in this action. Dkt. No. 863.

-1-

the asserted claims of the '389 Patent were valid and that EchoStar's accused DVRs infringed each of those claims. The jury also found EchoStar's infringement to be willful and awarded TiVo $73,991,964 in compensatory damages. *See* Dkt. No. 690 (verdict form).

After trial, this Court issued a permanent injunction covering the infringing DVRs.[2] Dkt. No. 806 at 2. After this Court entered its injunction, EchoStar asked the Federal Circuit to stay the injunction during its pending appeal, which the Circuit granted. In its stay request, EchoStar represented that without the stay it would be unable to provide DVR service and would risk losing a significant portion of its existing or potential customers, which could cost the company $90 million per month. *See* Dkt. No. 920 at 20 (citing EchoStar's Reply Brief In Support of Its Emergency Motion to Stay the District Court's Injunction, at 9). EchoStar made this representation even though it had nearly completed certain design-around efforts. Dkt. No. 854 at 10. Indeed, EchoStar began downloading redesigned software into the infringing receivers on October 24, 2006, less than a month after the Circuit granted EchoStar's stay request. *Id.*

On appeal, the Federal Circuit affirmed the jury's verdict in part and remanded the case. *See TiVo Inc. v. EchoStar Commc'ns Corp*, 516 F.3d 1290 (Fed. Cir. 2008). In doing so, the Circuit dissolved the stay of this Court's injunction and remanded for "a determination as to the additional damages, if any, that TiVo has sustained while the stay of the permanent injunction has been in effect." *Id.* at 1312. On April 18, 2008, the Circuit's mandate issued and this Court's injunction was reinstated. Thus, the time period relevant to the determination of damages during the stay is the

---

[2] This Court's permanent injunction contained an exception for 192,708 infringing DVRs that had been placed with the end-user. Dkt. No. 806 at 2. This exception covered those DVRs on which TiVo has received lost profits, and against which TiVo was not pursuing an injunction. Dkt. No. 747 at 16.

twenty-month period from September 8, 2006, when this Court's injunction was entered and subsequently stayed, to April 18, 2008, when that stay was dissolved.

## II. LEGAL PRINCIPLES

When a district court issues an injunction, which is subsequently stayed, damages may be awarded for infringements taking place after the injunction would have taken affect. *See TiVo*, 516 F.3d at 1312; *Amado v. Microsoft Corp.*, 517 F.3d 1353, 1362 (Fed. Cir. 2008) ("When a district court concludes that an injunction is warranted, but is persuaded to stay the injunction pending an appeal, the assessment of damages for infringements taking place after the injunction should take into account [a number of factors]."). Although such an award may take the form of monetary damages, an award that remedies a stay is equitable in nature and entrusted to the discretion of the court. *See Amado*, 517 F.3d at 1362; *cf. Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1315-16 (Fed. Cir. 2007) (post-judgment award part of court's equitable powers as "not all money relief is properly characterized as 'damages.'"), *and Bowen v. Mass.*, 487 U.S. 879, 910 (1988) ("[E]ven if the District Court's order are construed in part as order for the payment of money . . . such payments are not 'money damages' . . . . That is, since the orders are for specific relief (they undo the Secretary's refusal to reimburse the state) rather than for money damages (they do not provide relief that substitutes for that which ought to have been done) they are within the District Court's jurisdiction . . . ."). Because such an award is within the court's equitable power, the Seventh Amendment right to jury trial is not implicated. *See Paice*, 504 F.3d at 1315-16.

In determining the award amount for infringements taking place during the stay, a court should consider (1) the change in the parties' bargaining positions; (2) the change in economic circumstances resulting from the determination of liability, including the infringer's likelihood of

success on appeal, the infringer's ability to immediately comply with the injunction, and the parties' reasonable expectations if the stay was entered by consent or stipulation; and (3) the evidence and arguments found material to the granting of the injunction and the stay. *Amado*, 517 F.3d at 1362. This determination is ultimately left to the sound discretion of the district court, provided that the court gives a clear explanation of its reasons for the award. *Id.*

### III. PARTIES' POSITIONS & DISCUSSION

TiVo argues that it is due $220,349,154 for the period that the stay was in effect. Dkt. No. 852. EchoStar counters with an award of $16,400,809. Dkt. No. 854.

TiVo's amount can be dissected into two parts: $51,846,757 in lost profits and $168,502,397 in royalties. Dkt. No. 854 at 16-23. TiVo argues that it would have acquired over 519,000 new customers had the injunction gone into effect. *Id.* at 16-18. The bulk of these customers would have turned to TiVo in October of 2006, when EchoStar would have been forced to disable its DVR capabilities. *Id.* The remainder are customers that EchoStar acquired during the stay who may have turned instead to TiVo. *Id.* With respect to EchoStar subscribers not covered by TiVo's lost profits analysis, TiVo claims it is due $2.25 per DVR subscription per month. *Id.* at 19- 23. This $2.25 rate represents a $1 increase over the jury's $1.25 royalty rate. TiVo claims this increase is reasonable given fundamental differences in pre-judgment versus post-judgment infringement. *Id.* (citing *Amado*, 517 F.3d at 1361). In particular, TiVo notes that EchoStar increased its own prices by $1 during the stay period. Dkt. No. 852 at 23; Dkt. No. 860 at 26:23-27:4 ("[W]e have raised the royalty rate from $1.25 to $2.25. . . . In fact, during this same time period EchoStar actually raised its rates . . . by the same dollar. So we are simply raising the proposed royalty rate by the same amount that EchoStar raised its rates.").

In response, EchoStar argues that stay damages cannot be awarded on its design-around DVRs absent proof that they continue to infringe the '389 Patent. Dkt. No. 854 at 10-15. Thus, EchoStar's calcuation removes from consideration any receiver in which the design-around had been installed. *Id.* Those installations began in late October 2006 and were completed by April 2007, thus significantly reducing the stay period in EchoStar's calculation. *Id.* Moreover, EchoStar argues that the jury's royalty rate of $1.25 should continue to apply because the design-around placed EchoStar in a stronger negotiation position. *Id.* at 22-26. Finally, EchoStar argues that TiVo is not entitled to lost profits because 1) TiVo cannot recover lost profits twice on the same DVR placements, and 2) this Court's supplemental damages calculation, which applies to any period of infringement not covered by the jury verdict and did not include lost profits, is the law of the case. *Id.* at 15-18.

This Court has already determined that EchoStar's design-around was not more than colorably different from the adjudged DVRs and that EchoStar continues to infringe the '389 Patent. Memorandum Opinion of June 2, 2009. Therefore, all infringing products are subject to the Court's award for damages during the stay period, notwithstanding EchoStar's modified software.

In addition, this Court finds that a reasonable royalty rather than a lost profit analysis is more appropriate for this case. A lost profit analysis would force this Court to assume that the injunction went into effect on October 8, 2006. As a result, EchoStar would have lost a certain percentage of its customers after it disabled its DVR capability. TiVo would have then been able to capture some, but not all, of those customers. Finally, a certain number of customers who opted for EchoStar service during the twenty-month stay might have become TiVo customers. Such an analysis heaps speculation upon speculation. Instead, this Court finds it more appropriate to assume that the parties

negotiated for a license covering the twenty-month stay period. A post-judgment hypothetical negotiation can be grounded in the jury's verdict, the parties' positions following trial, and any arguments used to obtain the stay. *See Amado*, 517 F.3d at 1361-1362.

This Court finds that a hypothetical negotiation between TiVo and EchoStar, which would have occurred around September 8, 2006 and resulted in a twenty-month license, would have settled on the jury's royalty rate of $1.25 per DVR subscriber per month. This Court notes that TiVo is now requesting a royalty rate of $2.25 per DVR subscriber per month. This rate is probative of the rate that TiVo might have willingly accepted at that time. Thus, the logical award should fall somewhere within this $1.25 to $2.25 range.

A number of factors necessitate that the award remain on the lower end. First, EchoStar was in the process of designing around the '389 Patent. Although this Court has recently determined that EchoStar's design-around was ultimately unsuccessful, neither party would have been aware of that fact in September 2006. As a result, EchoStar could have well argued that the royalty rate for the twenty-month license should have been reduced. Second, EchoStar had a number of strong appellate points at that time, which is evidenced by the fact that this Court's claim construction and the jury's infringement finding regarding the '389 Patent's Hardware Claims was ultimately reversed. While the parties could not have foreseen the appeal's outcome, the strength of EchoStar's appellate points may have kept that parties near the status quo—the jury's verdict. Third, although the jury found EchoStar to be a willful infringer, this Court declined TiVo's request that damages be enhanced. Dkt. No. 775. Because this Court declined to enhance the jury's verdict for pre-judgment infringement, it is unlikely that the parties would have agreed to an enhancement for post-judgment infringement. Finally, as of September 2006, neither party was aware of the fact that EchoStar

would eventually raise its prices by $1.  TiVo all but admits that EchoStar's $1 price increase is the reason that TiVo now requests a $2.25 rate.  *See* Dkt. No. 860 at 26:23-27:6.  Because the main impetus for TiVo's request would have been absent back in September 2006, it is unlikely that TiVo would have requested a $1 or 80% increase over the jury's royalty rate.

Therefore, this Court finds that a hypothetical negotiation between the parties in September 2006 would have settled on the jury's verdict for the twenty-month stay period.  TiVo shall be awarded $1.25 per DVR subscriber per month, notwithstanding EchoStar's design-around efforts.  By modifying the royalty rate reflected in Exhibit 12 of TiVo's expert declaration (Dkt. No. 853, Ex. 12), this Court calculates the total stay damages to be $103,068,836.  TiVo is entitled to interest on this award in accordance with 28 U.S.C. § 1961.

## IV. CONCLUSION

For the reasons set forth in this order, TiVo's Revised Motion on Remand for Damages During the Stay of the Permanent Injunction (Dkt. No. 852) is hereby **GRANTED IN PART**.  TiVo is hereby awarded $1.25 per DVR subscriber per month plus interest for the stay period.

**SIGNED this 2nd day of June, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE