## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| TIVO INC., | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 2:04-CV-01 (DF) |
| | § | |
| DISH NETWORK CORPORATION, | § | |
| et al., | § | |
| | § | |
| **Defendants.** | § | |

## <u>O R D E R</u>

Before the Court is TiVo's Motion for Sanctions. Dkt. No. 946. Also before the Court are Echostar's response, TiVo's reply, and EchoStar's sur-reply. Dkt. Nos. 964, 969, and 974. The Court held a hearing on this matter on July 28, 2009. Dkt. No. 983 (hearing transcript). Having considered the parties' arguments in light of this Court's previous findings and relevant case law, the Court hereby awards TiVo $2.25 per DVR subscriber per month during the contempt period.

## I. BACKGROUND

On June 2, 2009, the Court found Defendants (collectively "EchoStar") in violation of the injunction that this Court entered following a jury trial and that was affirmed on appeal. Dkt. No. 929. Specifically, the Court found that EchoStar's attempted design-around products were not more than colorably different from the adjudicated products and that they still infringed TiVo's '389 Patent. *Id.* at 9-31. In the alternative, the Court found that EchoStar had failed to comply with the plain directives of this Court's order. *Id.* at 31-34. TiVo now requests that appropriate contempt sanctions be entered. Dkt. No. 946.

## II.  LEGAL PRINCIPLES

The award of contempt sanctions does not raise any issue unique to patent law.  *See Dow Chem Co. v. Chem Cleaning, Inc.*, 434 F.2d 1212, 1214 (5th Cir. 1970).  Accordingly, the proper law to be applied is that of the regional circuit rather than the Federal Circuit.  *Graves v. Kemsco Group, Inc.*, 824 F.2d 754, 755 (Fed. Cir. 1988).

Under Fifth Circuit law, a contempt order may be characterized as either civil or criminal based on its primary purpose.  *Lamar Fin. Corp. v. Adams*, 918 F.2d 564, 566 (5th Cir. 1990).  Where the purpose of the sanction is to "punish the contemnor and vindicate the authority of the court," the sanction is criminal in nature.  *Id.*  Where, however, the purpose of the sanction is "to coerce the contemnor into compliance with a court order, or to compensate another party for the contemnor's violation," the sanction is civil in nature.  *Id.*

In determining the appropriateness of a civil contempt sanction, the Court should consider four factors: "(1) the harm from noncompliance; (2) the probable effectiveness of the sanction; (3) the financial resources of the contemnor and the burden the sanctions may impose; and (4) the willfulness of the contemnor in disregarding the court's order." *Id.* at 567 (citing *U.S. v. United Mine Workers*, 330 U.S. 258 (1947)).

## III.  PARTIES' POSITIONS & DISCUSSION

TiVo requests that monetary sanctions be issued that will disgorge EchoStar of DVR profits made during the period that EchoStar was in contempt of this Court's injunction.  Dkt. No. 946 at 12-18.  TiVo argues that disgorgement is an appropriate sanction for EchoStar's contempt and that the Federal Circuit has approved such awards in the past.  *Id.* at 12-13 (citing *Brine, Inc. v. STX, L.L.C.*, 139 Fed. App'x. 281 (Fed. Cir. 2005), *aff'g* 367 F. Supp. 2d 61 (D. Mass. 2005); *Schaefer*

*Fan Co. v. J & D Mfg.*, 265 F.3d 1282, 1290 (Fed. Cir. 2001)).  Based on TiVo's calculation, EchoStar has made at least $974.5 million in DVR profit between April 18, 2008 and July 28, 2009. *Id.* at 8-10 (citing Ugone Decl. ¶ 25).  Although an award of nearly $1 billion may seem excessive, TiVo argues that it is justified given the circumstances of EchoStar's contempt—including the harm to TiVo, the existence of a profit incentive that encourages EchoStar to violate the injunction, EchoStar's financial strength, and EchoStar's willful disregard for the Court's order.  *Id.* at 14-18.

TiVo, however, recognizes that other courts in this circuit have awarded contempt sanctions amounting to less than a total disgorgement of profit.  *Id.* at 13-14 (citing *Dow*, 434 F.2d at 1214 (affirming an award of double damages); *Additive Controls & Measurement Sys., Inc. v. Flowdata, Inc.*, Civ. No. H-90-155, 1994 WL 749595, at *11 (S.D. Tex. July 12, 1994) (awarding damages amounting to of 50% of contemnor's gross sales); *Kerwitt Med. Prods., Inc. v. N & H Instruments, Inc.*, 224 U.S.P.Q. 679, 687 (N.D. Tex. 1984) (awarding enhanced damages)).  Thus, TiVo argues that enhanced damages—trebling the jury's royalty rate—may be appropriate as an alternative to disgorgement.  *Id.* at 18-20.  TiVo argues that the same factors that justify disgorgement of profits support an award of treble damages.  *Id.* at 19.  Moreover, TiVo argues that the royalty rate should be $2.25 per subscriber per month—rather than the jury's $1.25 rate—because EchoStar has increased its DVR fee by $1.00 since the jury's verdict.  *Id.* at 19-20.  By TiVo's estimation, trebling a $2.25 royalty rate during the contempt period would result in a total award of $619.9 million.  *Id.* at 20 (citing Ugone Decl. ¶ 5b).

Finally, TiVo requests compensation for the attorney's fees and costs expended to secure EchoStar's compliance with the injunction.  *Id.* at 20-24.  TiVo contends that it is "well-established" that attorney's fees should be included in a contempt award.  *Id.* at 21 (citing *Hutto v. Finney*, 437

U.S. 678, 690 n.14 (1978); *Cook v. Ochsner Found. Hosp.*, 559 F.2d 270, 272 (5th Cir. 1977)).

TiVo argues that the Court's authority to award attorney's fees in contempt proceedings is broad and

that the Court may do so without an explicit finding that this is an "exceptional" case. *Id.* (citing

*Dow*, 434 F.2d at 1215). Furthermore, TiVo contends that all expenses—including those related to

expert witnesses—may be awarded to reimburse TiVo and make it whole. *Id.* at 22 (citing *Sheila's

Shine Products, Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 130-31 (5th Cir. 1973); *Dow*, 434 F.2d at

1215).

       In response, EchoStar argues that sanctions are unwarranted in this case. Dkt. No. 964.

EchoStar contends that it worked in good faith to design around the '389 Patent. *Id.* at 12. EchoStar

maintains that it had ample factual and legal grounds for believing that it had successfully designed

around TiVo's patent, including advice of competent legal counsel. *Id.* at 12-13. As a result,

EchoStar argues that its redesign efforts were "a legitimate attempt to test the boundaries of the

court's prior construction of the patent and therefore sanctions [are] not warranted." *Id.* (citing

*Decade Indus. v. Wood Tech., Inc.*, 145 F. Supp. 2d 1075, 1077 (D. Minn. 2001) (finding sanctions

unwarranted where defendants attempted to design around patent in good faith)). Moreover,

EchoStar argues that sanctions would be inconsistent with the general policy favoring efforts to

design around patents. *Id.* at 13 (citing *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236

(Fed. Cir. 1985))

       EchoStar also maintains that any harm to TiVo caused by EchoStar's continuing infringement

would be fully compensated by the jury's $1.25 royalty rate. *Id.* at 15. Extending the jury's royalty

rate—an action the Court previously used to compensate TiVo for the period of EchoStar's

appeal—would allow TiVo to recover an additional $114.8 million. *Id.* If the Court, however, finds

that an additional sanction is warranted in this case, EchoStar contends that a 20% rate increase

(consistent with EchoStar's 20% DVR fee increase from $4.98 to $5.98) would be more appropriate.

*Id.* at 21-22.  EchoStar's 20% increase would yield a $1.50 royalty during the contempt period and

result in a $137.8 million award.  *Id.*  In any case, EchoStar argues that there is no basis for trebling

the jury's royalty rate as alternatively requested by TiVo.  *Id.* at 22-23.

This Court finds that some sanction is warranted under the circumstances of this case.  This

Court, however, is unconvinced by either party's suggested awards.

On the one hand, EchoStar's suggested $1.25 royalty rate is inadequate.  It would merely

extend the jury's royalty over the contempt period, effectively turning this Court's injunction into

a compulsory license.  Similarly, the Court finds that EchoStar's suggested 25¢ "sanction" is

insufficient to either coerce EchoStar into compliance with the injunction, or to compensate TiVo

for the contempt.  On the other hand, TiVo's suggested disgorgement of nearly $1 billion is

unreasonable under the circumstances of this case.  TiVo's suggested sanction seeks to punish

EchoStar for its actions.  While the Court can appreciate the impetus behind the desire to see

EchoStar punished, the Court cannot approve such an award.

Instead, after considering the four *Lamar* factors and the purpose of civil contempt sanctions,

the Court finds that a contempt sanction equal to a rate of $2.25 per DVR subscriber per month is

appropriate.  To begin with, the Court finds—as it has in the past (Dkt. No. 931)—that the jury's rate

of $1.25 is minimally sufficient to compensate TiVo for EchoStar's continued infringement.  The

jury's rate by itself, however, would not provide sufficient coercive pressure on EchoStar to bring

itself in compliance with this Court's order.  As mentioned above, a sanction equal to the jury rate

would be indistinguishable from a compulsory license, an expense EchoStar has likely factored into its cost of doing business.  Thus, some additional sanction is warranted.

Turning to the four *Lamar* factors, the Court finds that a $1 addition to the jury's royalty rate is appropriate given the circumstances of this case.  First, the Court has already found that the harm suffered by TiVo due to EchoStar's noncompliance is substantial.  *See* Dkt. No. 929 at 34-35.  The harm suffered by TiVo, however, is slightly offset by patent policy, which favors and promotes attempts to design around valid patents.  *See State Indus.*, 751 F.2d at 1236.  An oppressive sanction in this case would be worrisome for inventors in the DVR field and might stifle future innovation.

Second, the Court finds that a $1 increase—in effect, an 80% increase of the jury award—would yield an effective sanction.  A $2.25 rate per month would represent a nearly 40% royalty on the $5.98 per month fee that EchoStar currently charges its customers.  Although EchoStar's financial resources are considerable, a 40% royalty is substantial and cannot be easily overlooked.  It will be difficult for EchoStar to pass this $1 rate increase onto its consumers without charging more for DVR service than its main competitors.

Third and finally, the Court declines to find that EchoStar's contempt has been willful.  The Court has often noted the contentious nature of this case and has expressed disapproval for some of the tactics used by the parties.  *See* Dkt. No. 775.  Furthermore, both parties have spent a considerable amount of time and energy arguing about the nature of EchoStar's ongoing infringement and whether EchoStar has acted in good faith or bad.  While the Court finds it distasteful that EchoStar would engage in an ad-campaign that touted its DVRs as "Better Than TiVo" while continuing to infringe TiVo's patent, the Court finds that EchoStar may have genuinely believed in its design-around efforts.  The Court has heard testimony from EchoStar's CEO, Charles

Ergen, and the lead engineer on EchoStar's design-around effort, Dan Minnick; both testified as to their belief that EchoStar had successfully designed around the '389 Patent. For the purpose of these contempt sanctions, the Court will take these representations at face value. As a result, the Court will not treble the sanction rate at this time. If, however, EchoStar is unsuccessful on appeal and nevertheless continues to disregard this Court's orders, the Court will seriously entertain the award of enhanced sanctions.

For the foregoing reasons, the Court hereby awards TiVo $2.25 per DVR subscriber per month during the contempt period. This rate includes the jury's rate of $1.25 to compensate TiVo for EchoStar's continued infringement and an additional $1.00 sanction to promote EchoStar's compliance with this Court's orders. The contempt period will run from the date of the Federal Circuit's mandate following the original appeal, April 18, 2008, to the Circuit's most recent stay of the order holding EchoStar in contempt, July 1, 2009. By this Court's estimation, the total award should amount to nearly $200 million. *See* Dkt. No. 947 at 4-5 (rate of $2.25 through July 28, 2009 equal to $206.6 million). This award will include approximately $110 million in compensation based on the jury's award and approximately $90 million in sanctions.

Furthermore, the Court finds that TiVo is entitled to reimbursement of attorney's fees and costs incurred during these contempt proceedings. These costs shall include all costs associated with contempt proceedings in this Court, including those related to expert witnesses, but shall not include costs associated with the declaratory judgment action filed by EchoStar in Delaware.

## IV.  CONCLUSION

For the reasons set forth in this order, TiVo's Motion for Sanctions (Dkt. No. 946) is hereby **GRANTED IN PART**.  TiVo is hereby awarded $2.25 per DVR subscriber per month for the contempt period.  In addition, TiVo is hereby awarded all attorney's fees and costs incurred during contempt proceedings in this Court.  If the parties cannot agree on the amount incurred by TiVo, then TiVo may request that the Court resolve this dispute.  Any such request should be made by motion within fourteen (14) days of this Order.

Although a civil contempt sanction may be appealable as an order granting or modifying an injunction under 28 U.S.C. § 1292(a)(1), the parties may request that this Court enter an amended final judgment if they feel such is procedurally required.

**SIGNED this 4th day of September, 2009.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE